UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:22-00005 (WOB-CJS)

ANDREW T. BOSTLE,

                      PLAINTIFF,

VS.            MEMORANDUM OPINION AND ORDER

JABIL, INC.,

                      DEFENDANT.

Before the Court is Jabil, Inc.'s Motion to Partially Dismiss. (Doc. 29). The issues are fully briefed and the Court now issues this Memorandum Opinion and Order.

*Factual and Procedural Background*

In June 2020, Bostle overheard his supervisor, Kevin Fausz, using racial slurs at work. (Doc. 1 at 3). Bostle was hesitant to report Fausz, but Bostle eventually submitted a written statement describing the incident to Human Resources. (*Id.*).

Bostle was called into the HR office to discuss the incident. (*Id.*). During that meeting, Fausz interrupted and asked to speak with one of the HR representatives. (*Id.*). After the meeting, someone told Bostle that Fausz had been outside the office "monitoring what was being discussed." (*Id.*).

A couple of weeks later, another employee sent an email accusing multiple Jabil employees of making racist remarks. (*Id.* at 4). It is unclear from the pleadings whether this email was

only sent to Bostle, or if it was sent companywide. The employee who sent that email resigned from Jabil the same day. (*Id.*). The next day, Jabil sent a companywide email regarding the accusations. (*Id.*).

About a week later, Jabil suspended Bostle with pay pending its investigation of his allegations. (*Id.*). On September 1, 2020, a Jabil executive told Bostle that he was fired. (*Id.*). The executive did not provide a reason. (*Id.*). Jabil sent Bostle a Mutual Separation Agreement and Release and offered him $824.00 as severance pay, which Bostle rejected. (*Id.*).

Bostle claims he then filed a discrimination charge form with the Equal Employment Opportunity Commission (EEOC) on October 26, 2020. (*Id.* at 2). A copy of that charge is attached to his Complaint. (Doc. 1-1). There is a signature on the charge form, but no accompanying date. (*Id.*). There is also a notary stamp and signature dated October 26, 2020. (*Id.*). The charge form says it was received by the EEOC on September 22, 2021, almost a year after Bostle claims it was submitted and well outside the 300-day time limit. (*Id.*). In December 2021, the EEOC sent Bostle a "Dismissal and Notice of Rights" form. (Doc. 1-2). The form said the EEOC was closing the file on Bostle's charge because it was not timely filed. (*Id.*).

2

*Analysis*

First, a preliminary matter. Jabil argues that, in analyzing its Motion to Partially Dismiss, the Court should strike or disregard Bostle's Response because it was untimely. (Doc. 31 at 1). Local Rule 7.1 requires responses to be filed within twenty-one days. Bostle's Response was five days late, and he did not request an extension or move for leave. (Doc. 30).

The Court will consider both parties' arguments but admonishes Bostle's counsel to comply with all deadlines when practicing before this Court.

### A. Bostle did not exhaust his administrative remedies, and equitable tolling cannot save his untimely EEOC filing.

Bostle's first claim is for retaliation. (Doc. 1 at 5 ¶¶ 25, 26). Before a plaintiff can bring a Title VII retaliation claim, he must exhaust his administrative remedies by timely filing a charge with the EEOC. 42 U.S.C. § 2000e-5(f)(1). The default deadline for filing a charge is 180 days, but that deadline is extended to 300 days if the plaintiff first institutes proceedings with a state or local agency. § 2000e-5(e)(1).

Here, the parties assume that the 300-day deadline applies, (Doc. 29 at 4; Doc. 30 at 2), but there is no evidence that Bostle instituted the necessary proceedings to trigger the extended deadline. Nevertheless, if Bostle cannot satisfy the 300-day

deadline then he cannot satisfy the 180-day deadline either. The Court will proceed as if the 300-day deadline applies.

Bostle had 300 days from the date of the alleged retaliation to file his EEOC charge. A charge is deemed filed when the EEOC receives it. 29 C.F.R. § 1601.13(a)(4)(ii)(A). Here, the last instance of alleged retaliation occurred on September 1, 2020, when Jabil fired Bostle. (Doc. 1 at 4 ¶ 20). Thus, for Bostle's charge to be timely filed, the EEOC needed to receive it by June 28, 2021. The stamp on the charge form shows that the EEOC did not receive it until September 22, 2021, eighty-six days late. (Doc. 1-1).

Bostle argues that the charge-filing deadline should be equitably tolled. (Doc. 30 at 4). The deadline is not a jurisdictional requirement, but a condition precedent, and is therefore subject to equitable doctrines like tolling. *Doan v. NSK Corp.*, 97 F. App'x 555, 558 (6th Cir. 2004) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Sixth Circuit courts grant equitable tolling "sparingly" and consider several factors: "(1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Townsend v. Rockwell Automation,*

4

*Inc.*, 852 F. App'x 1011, 1014 (6th Cir. 2021) (citing *Jackson v. United States*, 751 F.3d 712, 719 (6th Cir. 2014)). Here, the parties focus on the diligence and prejudice factors. (Doc. 30 at 4; Doc. 31 at 3-7).

Bostle argues that he was diligent because he submitted the charge form to the EEOC on October 26, 2020. (Doc. 30 at 4). He points out that the date on the notary stamp is also October 26, 2020. (*Id.*). He claims that "it was later understood that the EEOC did not receive Bostle's complaint as it was misplaced due to certain technical issues that were beyond Bostle's control." (*Id.* at 2). He argues that because those technical issues were not his fault, he was diligent in pursuing his claim. (*Id.* at 4).

Jabil counters by saying that Bostle cited no law supporting his claim that technical issues can support equitable tolling, nor did he provide any evidence of technical issues. (Doc. 31 at 4-5). Jabil also argues that even if Bostle did send his charge form to the EEOC in October 2020, he was still not diligent in pursuing his rights because he never followed up to ensure receipt of the form or to check its status. (*Id.* at 6).

The Court finds Jabil's arguments on the diligence factor more persuasive. There are no Sixth Circuit cases directly on point, but Jabil points to an analogous Eleventh Circuit case, *Reed v. Winn Dixie, Inc.*, 677 F. App'x 607 (11th Cir. 2017), to show that Bostle's argument cannot support equitable tolling. In

5

*Reed*, the defendant filed a motion to dismiss, claiming the plaintiff did not timely file an employment discrimination charge with the EEOC. *Id.* at 610. The plaintiff argued that she did timely file her charge, but it was mishandled or the EEOC did not accept her mailing. *Id.* The EEOC sent the plaintiff a Dismissal and Notice of Rights, which indicated the charge was not timely filed. *Id.* The court concluded that the plaintiff had "not rebutted, apart from conclusory speculation that the EEOC mishandled her paperwork, the EEOC's assertions in its correspondence with her attorney that it did not receive any paperwork from her until" after the deadline. *Id.* at 612.

  So too here. Despite Bostle's insistence that technical issues prevented the EEOC from receiving his charge form, he does not identify those technical issues or offer any evidence of them. As in *Reed*, the EEOC sent Bostle a Dismissal and Notice of Rights indicating that his charge was not timely filed. (Doc. 1-2). Bostle's argument in response—that the EEOC lost or mishandled his paperwork—is "conclusory speculation." *Reed*, 677 F. App'x at 612. Nor has Bostle offered any evidence that he diligently pursued his rights after submitting the charge. There is no indication that he followed up to confirm receipt of his charge, check the status, or ask whether Jabil had responded, all of which he could have done using the EEOC's Public Portal. *See What You Can Expect After You File a Charge*, Equal Emp. Opportunity Comm'n (Oct. 27, 2020),

https://www.eeoc.gov/what-you-can-expect-after-you-file-charge [https://web.archive.org/web/20201027065752/https://www.eeoc.gov/what-you-can-expect-after-you-file-charge]. If Bostle was as distressed from the events as he claims, "left with no job or income, which is affecting his day-to-day life[,]" one would think he would at least follow up on his retaliation charge. (Doc. 30 at 7). Thus, the diligence factor of the equitable tolling analysis favors Jabil.

The other equitable tolling factor that the parties focus on is whether tolling the deadline would prejudice Jabil. (*Id.* at 4; Doc. 31 at 6-7). Bostle argues that no prejudice would result because his letter to the EEOC and the accompanying documents contained all the information needed to assess the claim. (Doc 30 at 4). Jabil argues that tolling the deadline would lead to prejudice because the purpose of filing the charge is to inform the EEOC of the claims so it can investigate and possibly resolve the dispute without court intervention, an opportunity that Jabil was denied since the charge was not timely filed. (Doc. 31 at 6).

The Court again finds Jabil's argument persuasive. Filing a charge allows the EEOC to notify the employer regarding the challenged conduct. 42 U.S.C. § 2000e-5(b). It also allows the EEOC to investigate and, if it finds insufficient evidence for the charge, to dismiss it, which could potentially save the employer from further litigation. *Id.* If the EEOC finds enough evidence for

7

the charge, the administrative process allows the parties to pursue a conciliation agreement or mediation. *Id.* Because Bostle did not file a timely charge, Jabil was unable to avail itself of these options, and was thereby prejudiced. Thus, the prejudice factor of the equitable tolling analysis also favors Jabil.

Therefore, because Bostle did not exhaust his administrative remedies by timely filing a charge with the EEOC, and because the deadline for doing so cannot be equitably tolled, the Court will dismiss Bostle's Title VII retaliation claim.

### B. Bostle's emotional distress claims are subsumed by his Kentucky Civil Rights Act claim.

Bostle's next claims are for negligent and intentional infliction of emotional distress (IIED). (Doc. 1 at 5-6 ¶¶ 27-36). Jabil argues that these claims are subsumed by Bostle's KCRA retaliation claim because the Act already provides a remedy for emotional distress damages, and because the emotional distress claims are based on the same facts as the retaliation claim. (Doc. 29 at 6-9; Doc. 31 at 7-9). Bostle argues that the emotional distress claims are standalone torts because there is no other remedy available for them, and because they are based on different facts than the retaliation claim. (Doc. 30 at 5-8).

First, a claim for emotional distress may lie in cases where no other remedy is available, hence its characterization as a "gap filler" tort. *Williams v. Burgess*, No. 5:21-cv-00099 (TBR), 2021

WL 5816830, at *5 (W.D. Ky. Dec. 7, 2021) (citing *Childers v. Geile*, 367 S.W.3d 576, 581 (Ky. 2012)). Bostle relies on *Pucke v. J.A. Stevens Mower Co., Inc.*, 237 S.W.3d 564 (Ky. Ct. App. 2007), to argue that this is such a case. In *Pucke*, the plaintiff worked at a small business with seven employees. *Id.* at 565. She was fired and later sued for gender discrimination, sexual harassment, retaliation, wrongful discharge, and IIED. *Id.* The court held that her IIED claim was not subsumed by her statutory claim because her employer was too small to meet the definition of "employer" under the Act, so the remedies provided by the Act were unavailable. *Id.* at 566. Thus, IIED was triggered as a gap filler to avoid "the absurd result that an employer could completely escape liability for discriminatory work-related conduct by simply maintaining a work force of less than eight employees, thereby falling outside the statutory definition of an 'employer' under [the Act]." *Id.*

But the gap that was present in *Pucke* is absent here. Jabil is not a seven-employee business falling outside the purview of the Act. According to Bostle's EEOC charge form, Jabil has over 1,100 employees, and is therefore covered by the Act. (Doc. 1-1). Thus, the remedies provided by the Act are available to Bostle, and those remedies subsume any emotional distress claims. *See Boggs v. Appalachian Reg'l Healthcare, Inc.*, No. 7:20-CV-151-REW, 2021 WL 5413801, at *5 (E.D. Ky. July 16, 2021) (quoting *Bogle v. Luvata Franklin, Inc.*, No. 1:12-CV-00200-TBR, 2013 WL 1310753, at *2 (W.D.

9

Ky. Mar. 28, 2013)) (internal quotation marks omitted) ("Kentucky courts have consistently held that where a plaintiff pursues relief under the Kentucky Civil Rights Act, a claim of IIED based on the same employer conduct is barred."); *Walter v. Guitar Ctr. Stores, Inc.*, No. 5:16-cv-459-JMH, 2017 WL 3260521, at *3 (E.D. Ky. July 31, 2017) (quoting *Wiseman v. Whayne Supply Co.*, 359 F. Supp. 2d 579, 592 (E.D. Ky. 2004)) (internal quotation marks omitted) ("The reasoning for this preemption is that [the Act] extends protection to personal dignity and freedom from humiliation of individuals, interpreted as allowing claims for damages for humiliation and personal indignity.").

Bostle's second argument for why the emotional distress claims are standalone torts—that they stem from different facts than the retaliation claim—is easily disposed of. Bostle posits that his retaliation claim and his emotional distress claims are "based on separate instances[.]" (Doc. 30 at 6). "[H]is IIED claim is not just based on his claim for retaliation[]" but instead "stems from the entire acts of Jabil that ultimately resulted in his termination." (*Id.*). But Bostle's Complaint lists all of those acts under the heading "FACTS COMMON TO ALL CAUSES OF ACTION." (Doc. 1 at 3). The emotional distress counts also reassert and incorporate the allegations in the retaliation count. (*Id.* at 5-6 ¶¶ 27, 33). If the facts are common to all claims, then the retaliation and emotional distress claims cannot be "based on

10

separate instances." Thus, because the retaliation and emotional distress claims stem from the same facts, the Act governs, and Bostle is limited to the remedies provided by the Act.

### C. Bostle's wrongful discharge public policy claim is also subsumed by his Kentucky Civil Rights Act claim.

Bostle's final claim is for wrongful discharge in violation of Kentucky public policy. Like the emotional distress claims, the wrongful discharge claim is preempted by the KCRA retaliation claim. "To the extent the basis for this claim [wrongful discharge in violation of public policy] is the same as that for his Title VII and KCRA claims, it is preempted and subsumed by those more specific laws." *Boggs*, 2021 WL 5413801, at *5 (quoting *Watts v. Lyon Cnty. Ambulance Serv.*, 23 F. Supp. 3d 792, 813 (W.D. Ky. 2014)). The basis of Bostle's wrongful discharge claim is identical to his Title VII and KCRA retaliation claims and is therefore subsumed.

### D. The causes of action that were referenced but had no accompanying claim are dismissed.

In addition to the claims discussed above, Bostle's Complaint references several causes of action but provides no accompanying claims. The Complaint references "discriminatory treatment of plaintiff because of his sex, race and creating a hostile work environment." (Doc. 1 at 2). However, the Complaint states no claims for those causes of action. The Complaint also references Kentucky's wage and hour law, Ky. Rev. Stat. § 337, but states no

11

claims under that law. Any causes of action that were referenced in the Complaint but for which no claims were made are dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

Therefore, for the reasons stated above, **IT IS ORDERED** that:

1. Defendant's Motion to Partially Dismiss be, and is hereby, **GRANTED;** and

2. The parties shall confer no later than October 21, 2022, to consider the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Rule 26(a)(1), and to develop a proposed discovery plan. Such proposed plan shall be filed no later than October 28, 2022.

This 6th day of October 2022.



Signed By:
*William O. Bertelsman*
United States District Judge